UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

05　CV　7094

| | |
|---|---|
| PETER WALLACE,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　　　　　　- against –<br><br>NEW SCHOOL UNIVERSITY and EUGENE LANG COLLEGE,<br><br>　　　　　　　　　　　　Defendants. | **NOTICE OF REMOVAL**<br><br>05 Civ. ____<br><br>New York State Supreme Court<br>(County of New York)<br><br>Index No. 109251/05 |

RECEIVED
AUG 10 2005
U.S.D.C. F.D. N.Y
CASHIERS

JUDGE WOOD

TO: UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendants New School University and Eugene Lang College[1], by their attorneys Nixon Peabody LLP, hereby remove the above-captioned matter to the United States District Court for the Southern District of New York, and respectfully state as follows:

1.　　　The bases for federal court jurisdiction over this matter are 28 U.S.C. §§ 1331, 1367 and 1441(a) and (b).

2.　　　Plaintiff Peter Wallace filed a Summons and Notice of Petition and a Verified Complaint and Petition in the matter entitled Peter Wallace v. New School University and Eugene Lang College, Index Number 109251/05, in the Supreme Court of the State of New York, County of New York.  Thereafter, on July 12, 2005, plaintiff served copies of the

---

[1]　Although named as a defendant, Eugene Lang College is not an independent legal entity and is not amenable to suit.  Eugene Lang College is a division of New School University.

G278820.1

Summons and Notice of Petition and Verified Complaint and Petition on New School University and Eugene Lang College.

3.      Pursuant to 28 U.S.C. § 1446(a), defendants attach hereto at Exhibit "A" the Summons and Notice of Petition and Verified Complaint and Petition which constitute all of the "process, pleadings and orders" defendants have received in connection with this matter to date.

4.      Plaintiff specifically alleges, at Paragraphs 61-62 of his Verified Complaint and Petition that defendants' "policies and/or conduct directly interfered with plaintiff's rights of association, speech, and other constitutionally protected activities in violation of his constitutional rights to equal protection of the laws, rights of association, right of free speech and right of due process under the First, Fifth and Fourteenth Amendments of the United States Constitution" and that "under 42 U.S.C. § 1983, plaintiff has been denied rights, property and privileges and has suffered and continues to suffer deprivation of property, mental anguish, emotional distress, humiliation and other compensable injuries as a result of defendants' conduct, practices and policies."

5.      Plaintiff further alleges, at Paragraph 65 of the Petition and Verified Complaint, that "[d]efendants with each other and others, engaged in a conspiracy for the purpose of depriving plaintiff of equal protection of the laws or of equal privileges or immunities under the law and/or his right of association and free speech and other constitutional privileges in violation of 42 U.S.C. § 1985."

6.      Plaintiff further alleges, at Paragraph 73 of the Petition and Verified Complaint, that "[d]efendants, having knowledge that the wrongs conspired to for the

G278820.1

purpose of depriving plaintiff of equal protection of the laws or of equal privileges or immunities under the law or other constitutionally protected rights, were about to be committed, and having power to prevent or aid in preventing the commission of the same, neglected or refused to do so in violation of 42 U.S.C. § 1986."

7.     Plaintiff's claims, therefore, arise under the United States Constitution and the laws of the United States.  Plaintiff also has asserted various state law claims which share a common nucleus of operative fact with plaintiff's claims pursuant to 42 U.S.C. §§ 1983, 1985 and 1986 and those claims therefore are part of the same case or controversy as the federal law claims.  The matter therefore is removable, in its entirety, to this Court pursuant to 28 U.S.C. §§ 1441(a) and (b).

8.     This notice is being filed within 30 days after receipt by defendants of a copy of the initial pleading setting forth the claims for relief in this matter, and is, therefore, timely filed pursuant to 28 U.S.C. §§ 1446(b) & (d).

9.     Written notice of the filing of this Notice will promptly be given to plaintiff and, together with a copy of the Notice of Removal, will be filed with the Clerk of the New York County Supreme Court, as provided by 28 U.S.C. § 1446(d).

G278820.1

**WHEREFORE**, Defendants New School University and Eugene Lang College pray that this matter proceed in this Court as an action properly removed thereto.

Dated: August 10, 2005
      Garden City, New York

                       Respectfully submitted,

                       **NIXON PEABODY LLP**

By: _____
                 Joseph J. Ortego (JO-3839)
                 James P. O'Brien, Jr. (JO-9373)

                 990 Stewart Avenue
                 Garden City, New York 11530-4838
                 (516) 832-7500
                 *Attorneys for Defendants*

- 4 -

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - x
PETER WALLACE,

                       Plaintiff/Petitioner,

              -against-

NEW SCHOOL UNIVERSITY.,
and EUGENE LANG COLLEGE,

                 Defendants/Respondents.

- - - - - - - - - - - - - - - - - - - - - x

Index No. 109251/05

SUMMONS AND
NOTICE OF PETITION

Plaintiff
Designates
New York County
as the place
trial.

NEW YORK
COUNTY CLERK'S OFFIC

JUN 0 1 2005

NOT COMPARED
WITH COPY FILED

The basis of
Venue is
Defendants'
Principal
Offices.

To the above-named Defendant:

    You are hereby summoned to answer the Verified Complaint and
Petition in this action and to serve a copy of your answer on the
Plaintiff's attorneys within twenty (20) days after service of
this Summons, exclusive of the day of service (or within thirty
(30) days after service is complete if this Summons is not
personally delivered to you within the State of New York). In
case of your failure to appear or answer, judgment will be taken
against you by default for the relief demanded in the Verified
Complaint and Petition.

           Pursuant to CPLR 7804(e), Respondents are directed to

file with the Clerk of the Court a certified transcript of the

record of the proceedings together with the entire file

containing the records of Petitioner held by Respondent and

referred to in the proceedings as being in the record as records

kept by Respondent.

    Dated: New York, New York
          July 1, 2005

                         BERANBAUM MENKEN BEN-ASHER
                         & BIERMAN, LLP
                         Attorneys for Plaintiffs
                         80 Pine Street, 32nd Floor
                         New York, New York 10005
                         (212) 509-1616

                         By: Mark H. Bierman

Defendants' address:

New School University
66 West 12th Street
New York, New York 10011

Eugene Lang College
65 West 11th Street
New York, NY 10011

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------------

PETER WALLACE

Index No. 109251/05

Plaintiff/Petitioner,

-against-

NEW SCHOOL UNIVERSITY and
EUGENE LANG COLLEGE

Defendants/Respondents.

---------------------------------------------------------------------

VERIFIED
COMPLAINT AND
PETITION     NEW YORK
COUNTY CLERK'S OFFICE

JUL 0 1 2005

NOT COMPARED
WITH COPY FILED

PLAINTIFF/PETITIONER, PETER WALLACE by his attorneys,

Beranbaum Menken Ben-Asher & Bierman, LLP, complaining of the defendants,

and as and for his Verified Complaint and Petition, alleges as follows:

## PARTIES

1. PETER WALLACE ("Prof. Wallace" or "plaintiff") is a natural person

whose residence is the premises known and described as 657 Warren Street, #3B,

Brooklyn, New York 11217 , which is situated in the County of Kings, City and State

of New York, and is employed as a professor by the defendants.

2. Defendant/Respondent NEW SCHOOL UNIVERSITY ("NSU") is,

on information and belief, an accredited institution of higher education chartered by

the state of New York and maintains its principal offices at 66 West 12th Street in the

County, City and State of New York.

3. Defendant/Respondent EUGENE LANG COLLEGE ("ELC") is, on

information and belief, an accredited institution of higher education chartered by the

state of New York and maintains its principal offices at 65 West 11th Street in the

County, City and State of New York.

## VENUE

4. Venue is properly placed in the County of New York, City and State of New York pursuant to CPLR 503, 506, and 509, and CPLR 7804(b) as the place where the defendants are located, where the defendants made the determination complained of, and where plaintiff otherwise designates.

## FACTS

5. Prof. Wallace began his employment with the defendants in or about 1986.

6. In or about 1989, after the resignation of Mary Stanton as the director of the defendants' Theater Department, the NSU conducted an extensive search for what it termed an exceptional and exciting educator and artist who could head-up and shape ELC's theater program and who could expand the possibilities of the defendants' theater program.

7. The search committee appointed by NSU and/or ELC to recommend qualified candidates for the Chair position ("the Search Committee"), outlined in its report of May 12, 1989 some of the essential skills, training, qualities and abilities that it required of the person that would be selected to guide the Theater Department into its future as a first rate theater department.

8. According to the Search Committee report, the person selected would not only have to bring strong focus to the teaching of acting, he or she would have to have the ability to focus the department's attention on directing, literature and theory, would have to be able to give a focus and context to the student's work, would have to be a person who had professional experience as a dramatic artist,

-2-

and would have to be a person with experience in teaching undergraduates in a liberal arts context.

9. The person to be selected by the Search Committee would also have to be able to bring a creative approach to the program and be able to ground the program in that approach.

10. The Search Committee conducted an exhaustive search, entertaining over two hundred applications, and conducting scores of interviews.

11. The Search Committee was so impressed with Prof. Wallace that in passing on hundreds of applications from scores of qualified applicants, the Search Committee enthusiastically recommended that Prof. Wallace be appointed as the Director of the Theater Program for the following year, while it continued its search.

12. The force of Prof. Wallace's abilities and the broad dimensions of his talents in heading up the Theater Department quickly became apparent to the defendants' Dean, the Provost, the faculty and the Search Committee.

13. The NSU and ELC were so impressed by Professor Wallace's command and development of the Department that the University ultimately abandoned its search for a person to fill the Department Chair position in favor Prof. Wallace and his Chair appointment was made permanent.

14. Approximately three years later, on or about May 28, 1992, Dean Donald M. Scott, in his letter of confirmation of Prof. Wallace's reappointment of that date, enthusiastically and emphatically stated: "I also want to thank you for your splendid work for the College this year. It has been a real pleasure watching you construct such an imaginative and exciting program in theater for Lang."

-3-

15. At that same time during Prof. Wallace's 1992 reappointment, ELC Provost Judith B. Walzer detailed some of the many reasons for Prof. Wallace's reappointment for three more years, noting that the theater department that Prof. Wallace had developed was viewed by the Dean, the incoming Acting Dean, and the faculty "as one of Lang's strong points."

16. Prof. Wallace was thereafter consistently reappointed as a full-time faculty member to serve as the Chair of the Theater Department.

17. As detailed in a letter of Dean Banu dated, January 21, 2001, Prof. Wallace was to be subjected to the most rigorous type of review of a professor that the University undertakes.

18. This rigorous review process, conducted at a time that Prof. Wallace had been with NSU and/or ELC for fifteen years, resulted in the reappointment of Prof. Wallace as full-time professor in his position as Chair for a five year term, the longest term for a faculty appointment generally given by the College.

19. Prof. Wallace, as the result of this vigorous reappointment process was reappointed and the defendants entered into an agreement with Plaintiff appointing him for a term to run through June 30, 2007, during which contract period he was to serve as the Chair/Director of the Theater Department.

20. In connection with this most recent reappointment, ELC Dean Banu recognized Prof. Wallace to be "an engaged and dedicated participant at the College and University".

21. In or about 2003, the defendants became engaged in a pitched battle with Academics Come Together ("ACT") and the United Auto Workers ("UAW")

-4-

wherein the defendants sought to defeat a drive by ACT/UAW to unionize certain professional faculty staff.

22. On August 21, 2003, approximately one year after Prof. Wallace's reappointment, Prof. Wallace was called by ACT/UAW to testify as a witness before the National Labor Relations Board ("NLRB"), Region Two, in connection with hearings to determine whether faculty with the defendants would be certified as a collective bargaining unit.

23. The defendants' extreme displeasure at Prof. Wallace giving testimony on this issue became apparent from the extremely hostile questioning that Prof. Wallace was subjected to by NSU/ELC's attorney as well as from the repeated attacks on Prof. Wallace's name and reputation launched against him at the NLRB hearing by the defendants' attorneys.

24. The defendants' General Counsel also participated at the hearing.

25. The record of the NLRB proceedings is replete with *ad hominem* attacks on Prof. Wallace's integrity and reputation by the defendants' counsel.

26. Defendants' counsel, without any apparent genuine basis, accused Prof. Wallace of slanting or fabricating his testimony in a manner designed to serve the Union's purposes.

27. On at least one occasion, the vicious nature of these unrestrained personal attacks on Prof. Wallace prompted the Hearing Officer to intercede to caution the defendants that: "it is inappropriate to attack the witness".

28. These attacks made transparent the defendants' considerable anger, malice and ill-will towards Prof. Wallace for his testifying before the NLRB.

-5-

29. Ultimately, and despite the defendants vitriolic and aggressive campaign to defeat the unionizing efforts, in 2004 the collective bargaining unit was certified by the NLRB.

30. Soon after Prof. Wallace testified before the NLRB, he took an approved partial leave, after which he was to continue in his Chair position.

31. However, as Prof. Wallace was preparing to resume his full time status as in the Chair position, and after informing defendants of that fact, he was abruptly notified by ELC Dean, Jonathan Veitch, on or about March 4, 2005 that he was being stripped of his Chair position and was being replaced by a halftime employee who Prof. Wallace himself had hired and supervised in the Department but had not recommended to act as Chair during his temporary partial leave.

32. Dean Veitch stated on March 4, 2005 that this action was being taken because "Central Administration" refused to work with Plaintiff. On information and belief, this refusal stemmed from Plaintiff having testified before the NLRB, in violation of the National Labor Relations Act.

33. The defendants' conduct was also designed and intended to prevent Prof. Wallace to assume the Chair of any reorganized or consolidated department which the Theater Chair/Director would assume (the chair person/director title of the ELC Theater Department or any successor department is referred to as the "Chair Position"), and to force him to resign his position as a professor with the defendants.

34. The impact of the University's breach and retaliatory conduct on Prof. Wallace has been swift and devastating.

35. Prof. Wallace has been profoundly embarrassed and humiliated before

-6-

faculty, administration and students.

36. Prof. Wallace's reputation and credibility in the arts world has been affected by the defendants' actions and conduct and he is at risk of losing or not securing projects, grants and funding.

37. Prof. Wallace's professional and academic reputation has suffered in the community as the result of defendants' conduct.

38. As a result of defendants' conduct, plaintiff has suffered extreme emotional distress, anxiety, and injury.

## AS AND FOR A FIRST CAUSE OF ACTION:

39. Plaintiff repeats and realleges each and every allegation contained in the paragraphs set forth above with the same force and effect as if set forth herein.

40. Defendants, in removing and/or excluding Prof. Wallace from the Chair Position, breached their contractual obligations to Prof. Wallace.

41. Defendants, by their conduct also breached the implied covenant of good faith and fair dealing.

42. By reason of such breach, plaintiff has suffered and continued to suffer damages, including consequential and incidental damages.

## AS AND FOR A SECOND CAUSE OF ACTION:

43. Plaintiff repeats and realleges each and every allegation contained in the paragraphs set forth above with the same force and effect as if set forth herein.

44. Defendants breached their agreement, promise and obligation to Prof. Wallace in removing, excluding and/or failing to retain him in the Chair Position.

45. The Chair Position at ELC is unique.

−7−

46. Plaintiff has no adequate remedy at law for the loss of his position and monetary relief alone will not adequately compensate plaintiff for such loss.

47. By reason of the foregoing, plaintiff is entitled to specific performance requiring defendants to reinstate him to the Chair Position.

### AS AND FOR A THIRD CAUSE OF ACTION:

48. Plaintiff repeats and realleges the allegations contained in the paragraphs set forth above with the same force and effect as if fully set forth below.

49. Plaintiff is entitled to an injunction permanently enjoining defendants from removing plaintiff from the Chair Position during the term of the contract absent any permissible grounds under the contract asserted in good faith.

### AS AND FOR A FOURTH CAUSE OF ACTION:

50. Plaintiff repeats and realleges the allegations contained in the paragraphs set forth above with the same force and effect as if fully set forth below.

51. Plaintiff relied upon defendants' representations that he would remain in the Chair Position during the period of the contract.

52. Defendants knew or should have known that plaintiff would rely on such representations.

53. Plaintiff's reliance was detrimental in that he would have sought other opportunities had he not been promised the Chair Position during the term of the Contract.

54. The defendants by their conduct are estopped from removing plaintiff from the Chair Position and to maintain him in that position.

### AS AND FOR A FIFTH CAUSE OF ACTION:

-8-

### Article 78 Petition for Certiorari and Prohibition

55.  Plaintiff repeats and realleges the allegations contained in the paragraphs set forth above with the same force and effect as if fully set forth below.

56. The defendants' determination to remove plaintiff from the Chair Position was arbitrary and capricious, an abuse of discretion, contrary to law, and in violation of the lawful procedures.

57.  Plaintiffs are entitled to a judgment annulling the determination of the defendants and compelling and mandating that defendants act in accordance with lawful procedures, and prohibiting defendants from engaging in unlawful and retaliatory conduct.

### AS AND FOR A SIXTH CAUSE OF ACTION:

58.  Plaintiff repeats and realleges the allegations contained in the paragraphs set forth above with the same force and effect as if fully set forth below.

59. Defendants existence and operations are extensively controlled, funded and involved by and under the provisions of local state and federal laws, and subject to the supervision of local, state and federal governmental authorities to such an extent as to be acting under color of state law.

60.  Defendants removed and/or excluded plaintiff from the Chair Position by reason of plaintiff engaging in constitutionally protected activities, and conspired to do so.

61. Said policies and/or conduct directly interfered with plaintiff's rights of association, speech, and other constitutionally protected activities in violation of his constitutional rights to equal protection of the laws, rights of association, right of free

-9-

speech and right to due process under the First, Fifth and Fourteenth Amendments of the United States Constitution.

62. As the result of defendants' conduct and under 42 U.S.C. §§1983, plaintiff has been denied rights, property and privileges and has suffered and continues to suffer deprivation of property, mental anguish, emotional distress, humiliation and other compensable injuries as a result of defendants' conduct, practices and policies.

63. Defendants conduct was wilful, outrageous, shocking, and evinced a lack of any good faith efforts to control or discourage such conduct thereby entitling plaintiff to an award of punitive damages against defendants. Plaintiff is also entitled to an award of costs attorneys fees as provided for by law.

## AS AND FOR AN SEVENTH CAUSE OF ACTION:

64. Plaintiff repeats and realleges each and every allegation contained in paragraphs set forth above with the same force and effect as if set forth herein.

65. Defendants with each other and others, engaged in a conspiracy for the purpose of depriving plaintiffs of equal protection of the laws or of equal privileges or immunities under the law and/or his right of association and free speech and other constitutional privileges in violation of 42 U.S.C. §1985.

66. Said defendants acted in furtherance of a conspiracy to deprive plaintiffs of the equal protections of the law, due process of law, right of association, right of free speech, and other constitutional rights.

67. Said defendants acted in concert to try and preclude plaintiff from exercising constitutional rights. The defendants, then further acted in furtherance of

-10-

the conspiracy.

68. Plaintiff was and continues to be injured in his person and property and deprived of the rights as a citizen of the United States as a result of these actions.

69. The defendants collectively acted to directly or indirectly deprive plaintiffs of the equal protection of the laws, or of equal privileges and immunities under the laws, the right of association, the right of free speech and other constitutionally protected rights.

70. One or more of the said defendants that engaged in said conspiracy, did or caused to be done, an act in furtherance of the object of such conspiracy by forcing and removing plaintiff from the Chair Position as the result of his exercise of constitutionally protected activities and engaging in other conduct in furtherance of the conspiracy, thereby injuring plaintiffs' person and property, and depriving him of having and exercising rights or privileges as a citizen of the United States.

71. Plaintiff has been denied employment opportunities and has suffered and continues to suffer mental anguish, emotional distress, humiliation, injury to reputation, embarrassment and other compensable injuries as a result of defendants' conduct and practices. Defendants conduct was and continues to be willful, outrageous, shocking, and evinced a lack of any good faith efforts to control or discourage such conduct thereby entitling plaintiff to punitive damages. Plaintiff is also entitled to an award of costs attorneys fees as provided for by law.

### AS AND FOR A EIGHTH CAUSE OF ACTION:

72. Plaintiff repeats and realleges each and every allegation contained in the paragraphs set forth above with the same force and effect as if set forth herein.

-11-

73. Defendants, having knowledge that the wrongs conspired to for the purpose of depriving plaintiff of equal protection of the laws or of equal privileges or immunities under the law or other constitutionally protected rights, were about to be committed, and having power to prevent or aid in preventing the commission of the same, neglected or refused to do so in violation of 42 U.S.C. §1986.

74. Plaintiff has been denied employment opportunities, has suffered and continues to suffer mental anguish, emotional distress, humiliation, embarrassment, injury to reputation and other compensable injuries as a result of defendants' practices. Defendants conduct was wilful, outrageous, shocking, and evinced a lack of any good faith efforts to control or discourage such conduct thereby entitling plaintiff to punitive damages. Plaintiff is also entitled to an award of costs attorneys fees as provided for by law.

## AS AND FOR A NINTH CAUSE OF ACTION:

75. Plaintiff repeats and realleges each and every allegation contained in the paragraphs set forth above with the same force and effect as if set forth herein.

76. Plaintiff avers that defendants' conduct described herein constitutes extreme and outrageous conduct intended to cause plaintiff severe emotional distress and to force him out of the ELC and NSU.

77. As the result of the foregoing egregious conduct, plaintiff has suffered, continues to suffer, and will suffer in the future, severe emotional distress, mental anguish and humiliation, and physical harm, and has incurred damages thereby, justifying the imposition of compensatory and consequential damages against defendants.

-12-

78. The conduct of defendants was and continues to be shocking, outrageous and malicious, was intended to injure plaintiff, and was done with malicious intent and/or reckless indifference to plaintiffs' rights, entitling plaintiff to an award of punitive damages.

## AS AND FOR A TENTH CAUSE OF ACTION:

79.     Plaintiff repeats and realleges each and every allegation contained in the paragraphs set forth above with the same force and effect as if set forth herein.

80.  On information and belief, defendants officers, deans, board members and others in positions of authority with defendants made false and defamatory written and oral statements and communicated or otherwise published them to each to other, to employees of defendants, to students, and to others concerning the plaintiff, including, but not limited to words or words to the effect that plaintiff was difficult, ineffective, unsuited for the Chair Position, a trouble make, incompetent, given to distorting facts and events, and an instigator.

81.  Defendants words were false, were expressed with malice and/or actual ill-will, and were not made in good faith or as part of a bonafide communication.

82. As the result of defendants defamatory statements, plaintiff suffered injury to reputation, and actual, consequential and special damages therefrom.

83. Defendants conduct was malicious, outrageous and shocking, thereby entitling plaintiff to an award of punitive damages.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION:

### Prima Facie Tort

84.     Plaintiff repeats and realleges each and every allegation contained in

-13-

the paragraphs set forth above with the same force and effect as if set forth herein.

85. Defendants intentionally and maliciously violated plaintiff's civil rights thereby causing plaintiff harm and injury.

86. Defendants in so doing acted without any legitimate business motive, excuse or justification.

87. As the result of defendants' malevolent conduct, plaintiff was deprived of property and employment benefits and opportunities and has suffered other compensatory and special damages.

88. The conduct of defendants was shocking, outrageous and malicious, was intended to injure plaintiffs, and was done with reckless indifference to plaintiff's rights, entitling plaintiffs to an award of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs pray for judgment against defendants on each of the foregoing causes of action and for all injuries, damages and losses suffered, for such amounts as may be determined at trial for actual, compensatory, consequential, incidental and special damages, for injunctive relief and specific performance, and for an order and judgment annulling and setting aside the determination of the defendants as requested in this complaint/petition and prohibiting defendants from engaging in prohibited or unlawful conduct, together with punitive damages, attorneys fees, interest, costs and disbursements, and such other and further relief as is just and proper.

-14-

Dated: New York, New York
      July 1, 2005

BERANBAUM MENKEN
BEN-ASHER & BIERMAN, LLP
Attorneys for Plaintiff
By: Mark H. Bierman, Esq.
80 Pine Street, 32nd Floor
New York, New York 10005
(212) 509-1616

-15-

## VERIFICATION

STATE OF NEW YORK )
COUNTY OF NEW YORK )  ss.:

PETER WALLACE, being duly sworn, deposes and says that he has read the foregoing complaint/petition and knows the contents thereof, that the allegations contained therein are true to his own knowledge, except as to those matters alleged to be on information and belief, and as to those matters he believes them to be true.

PETER WALLACE

Sworn to before me
this 1st day of July, 2005

NOTARY PUBLIC

MARK BIERMAN
Notary Public, State of New York
No. 24-4944008
Qualified in Kings County
Commission Expires Nov. 14, 19 2006

COUNTY OF NEW YORK

PETER WALLACE

                                                    SUMMONS / NOTICE OF
                                                    PETITION AND
                    Plaintiff/Petitioner,           V E R I F I E D
                                                    COMPLAINT/PETITION

          -against-

NEW SCHOOL UNIVERSITY, ET AL

              Defendants/Respondents.

Signature (Rule 130-1.1-a)

Print Name Below  _Mark H. Brewn_

LAW OFFICES
BERANBAUM MENKEN BEN-ASHER & BIERMAN LLP
Attorneys for
PLAINTIFF/PETITIONER
Office and Post Office Address, Telephone
80 PINE STREET-32ND FLOOR
NEW YORK, NY 10005
(212) 509-1616

To

Attorney(s) for

Service of a copy of the within                                    is hereby admitted.

Dated _July 12, 2005_

_Accepting service for both Eugene Lang College and New School University_

Sir:— Please take notice

☐ NOTICE OF ENTRY
that the within is a (certified) true copy of a                              20
duly entered in the office of the clerk of the within named court on

☐ NOTICE OF SETTLEMENT
that an order                             of which the within is a true copy will be presented for
settlement to the Hon.                                                one of the judges
of the within named court, at
on                        20        at            M.

Dated,

                                              Yours, etc.
                              BERANBAUM MENKEN BEN-ASHER & BIERMAN LLP
                                      Attorneys for
                                          Office and Post Office Address
                                          80 PINE STREET-32ND FLOOR
                                          NEW YORK, NY 10005

To

Attorney(s) for

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PETER WALLACE,

                        Plaintiff,

         - against –

NEW SCHOOL UNIVERSITY and EUGENE LANG
COLLEGE,

                     Defendants.

**05 CV 7094**
05 Civ. ____

JUDGE WOOD

## DEFENDANTS' DISCLOSURE STATEMENT PURSUANT TO RULE 7.1

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, defendant New School University, by its undersigned counsel Nixon Peabody LLP, affirms that it has no parent corporation and is not owned by a publicly-held corporation. New School University is a private, not-for-profit educational institution. Eugene Lang College, a division of New School University, is not an independent legal entity and is not amenable to suit.

Dated: August 10, 2005
       Garden City, New York

                    Respectfully submitted,

                    **NIXON PEABODY LLP**

                    By: _____
                       Joseph J. Ortego (JO-3839)
                       James P. O'Brien, Jr. (JO-9373)

                    990 Stewart Avenue
                    Garden City, New York 11530-4838
                    (516) 832-7500
                    *Attorneys for Defendants*

RECEIVED
AUG 10 2005
U.S.D.C. S.D. N.Y.
CASHIERS

G278948.1