UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PETER WALLACE,

                               Plaintiff,

              - against -

NEW SCHOOL UNIVERSITY and
EUGENE LANG COLLEGE,

                            Defendants.

05 Civ. 7094 (KMW)

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS

NIXON PEABODY LLP
990 Stewart Avenue
Garden City, New York 11530
(516) 832-7500

Attorneys for Defendants
  New School University and
  Eugene Lang College

Of Counsel
  Joseph J. Ortego
  James P. O'Brien, Jr.
  Jennifer Marciano Amato

G279122.3

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................1

THE COMPLAINT ALLEGATIONS.....................................................................................2

ARGUMENT

    POINT I

        THE COURT LACKS SUBJECT MATTER JURISDICTION
        BECAUSE THE CLAIMS ARE WITHIN THE EXCLUSIVE
        JURISDICTION OF THE NLRB.....................................................................3

    POINT II

        EVEN IF THE COURT DETERMINES THAT IT HAS
        JURISDICTION OVER PLAINTIFF'S CLAIMS, THEY
        EACH MUST BE DISMISSED FOR FAILURE TO
        STATE A CLAIM ...........................................................................................7

        A.      PLAINTIFF'S CONTRACT CAUSES OF ACTION FAIL ...............7

        B.      PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM FAILS............10

        C.      PLAINTIFF HAS FAILED TO ADEQUATELY PLEAD
                HIS ARTICLE 78 CAUSE OF ACTION .........................................10

        D.      SINCE THE UNIVERSITY IS A PRIVATE ENTITY,
                PLAINTIFF'S SIXTH CAUSE OF ACTION, SEEKING
                RELIEF PURSUANT TO 42 U.S.C. §1983 MUST BE
                DISMISSED.....................................................................................11

        E.      PLAINTIFF'S SEVENTH AND EIGHTH CAUSES OF
                ACTION UNDER SECTIONS 1985 AND 1986 FAIL....................15

        F.      PLAINTIFF'S NINTH CAUSE OF ACTION, FOR
                INTENTIONAL INFLICTION OF EMOTIONAL
                DISTRESS, FAILS AS A MATTER OF LAW .................................17

        G.      THE DEFAMATION CLAIM FAILS BECAUSE IT WAS
                NOT PLEADED WITH PARTICULARITY AND THE
                CHALLENGED COMMENTS ARE OPINION ................................19

H.   PLAINTIFF'S *PRIMA FACIE* TORT CLAIM FAILS
     TO STATE A CLAIM.........................................................................22

CONCLUSION...............................................................................................................25

# TABLE OF CASES

Agugliaro v. Brooks Bros., Inc., 802 F. Supp. 956 (S.D.N.Y. 1992) ............................16

Altschuler v. University of Penn. Law Sch., 1997 U.S. Dist. LEXIS 3248
   (S.D.N.Y. Mar. 21, 1997) ......................................................................................13

Belsky v. Lowenthal, 62 A.D.2d 319 (1st Dep't 1978), aff'd, 47 N.Y.2d 802 (1979) ..................23

Bhagat v. Quattrochi, 2004 U.S. Dist. LEXIS 24584 (S.D.N.Y. Dec. 8, 2004) ..............................8

Boddie v. Schneider, 105 F.3d 857 (2d Cir. 1997) ........................................................16

Brass v. American Film Techs, Inc., 987 F.2d 142 (2d Cir. 1993)...................................8

Brattis v. Rainbow Adver. Holdings, L.L.C., 2000 U.S. Dist. LEXIS 7345
   (S.D.N.Y. 2000) ......................................................................................................21

Bray v. Alexandria Women's Health Clinic, 506 U.S. 263 (1993).................................17

Caldwell v. American Basketball Ass'n, Inc., 66 F.3d 523 (2d Cir. 1995)......................5

Campbell v. McLean Trucking Co. & Chauffeurs, 592 F. Supp. 1560 (E.D.N.Y. 1984) ..............4

Carlisle v. City of Yonkers, 1996 U.S. App. LEXIS 30973 (2d Cir. Nov. 29, 1996) ..................14

Carter v. Cornell Univ., 976 F. Supp. 224 (S.D.N.Y. 1997), aff'd, 1998
   U.S. App. LEXIS 18807 (2d Cir. July 9, 1998)......................................................23

Carter v. Sheet Metal Workers' Int'l Ass'n, 724 F.2d 1472 (11th Cir. 1984)..................6

Celle v. Filipino Rep. Enter. Inc., 209 F.3d 163 (2d Cir. 2000) ...................................21

Chandie v. Whelan, 21 F. Supp. 2d 170 (E.D.N.Y. 1998)............................................17

Cho v. 401-403 57th Street Realty Corp., 300 A.D.2d 174 (1st Dep't 2002) .................9

Clarke v. Columbia Univ., 1996 U.S. Dist. LEXIS 15620 (S.D.N.Y. Oct. 23, 1996)...................11

Covington v. City of New York, 436 U.S. 658 (1978).................................................14

Curiano v. Suozzi, 63 N.Y.2d 113 (1984) ...........................................................23, 24

Daniels v. Provident Life & Cas. Ins., 2001 U.S. Dist. LEXIS 11388
   (W.D.N.Y. July 25, 2001)......................................................................................25

Daniels v. St. Luke's-Roosevelt Hosp. Center, 2003 U.S. Dist. LEXIS 18772
   (S.D.N.Y. Oct. 21, 2003) .......................................................................................24

Davis v. City of New York, 2000 U.S. Dist. LEXIS 18520
  (S.D.N.Y. Dec. 27, 2000)..........................................................................................18

Dusenbery v. United States, 534 U.S. 161 (2002).........................................................12

Dwares v. City of New York, 985 F.2d 94 (2d Cir. 1993).....................................14, 16

Engel v. Hawkins, 1996 U.S. Dist. LEXIS 18547 (S.D.N.Y. Dec. 12, 1996)...............20

Epstein v. Board of Tr. of Dowling Coll., 152 A.D.2d 534 (2d Dep't 1989)................21

Falk v. Anesthesia Assoc. of Jamaica, 228 A.D.2d 326 (1st Dep't 1996)....................22

Four Winds of Saratoga, Inc. v. Blue Cross & Blue Shield of Cent. New York, Inc.,
  241 A.D.2d 906 (3d Dep't 1997).................................................................................9

Franco v. Yale Univ., 80 Fed. Appx. 707 (2d Cir. 2003)............................................18

G-I Holdings, Inc. v. Baron & Budd, 179 F. Supp. 2d 233 (S.D.N.Y. 2001)..........23, 24

Gavenda v. Orleans County, 1997 U.S. Dist. LEXIS 1527
  (W.D.N.Y. Feb. 11, 1997).........................................................................................22

Girard v. 94th St. & Fifth Ave. Corp., 530 F.2d 66 (2d Cir. 1976)..............................16

Graham v. Henderson, 89 F.3d 75 (2d Cir. 1996).........................................................15

Gray v. Canisius Coll., 76 A.D.2d 30 (4th Dep't 1980).................................................11

Green v. New York City Dep't of Corr., 1999 U.S. Dist. LEXIS 5221
  (S.D.N.Y. Apr. 1, 1999).............................................................................................14

Griffin v. Breckenridge, 403 U.S. 88 (1971).................................................................15

Groat v. Town Bd. of Glenville, 100 Misc.2d 326
  (Sup. Ct. Schenectady Cty. 1979)..............................................................................24

Howell v. New York Post Co., 81 N.Y.2d 115 (1993)............................................17, 18

Int'l Longshoremen's Assoc. v. Davis, 476 U.S. 380 (1986)...........................................4

Keady v. Nike, Inc., 116 F. Supp. 2d 428 (S.D.N.Y. 2000)..........................................13

Kosson v. Algaze, 84 N.Y.2d 1019 (1995)......................................................................7

La Duke v. Lyons, 250 A.D.2d 969 (3d Dep't 1998)......................................................19

LaGoy v. Corr. Med. Serv., 358 F. Supp. 2d 58 (N.D.N.Y. 2005)..................................5

Leeds v. Meltz, 85 F.3d 51 (2d Cir. 1996)................................................................12, 13

Leone v. Rosenwach, 245 A.D.2d 343 (2d Dep't 1997) ...................................................22

Lopresti v. Merson, MacNaughton Lithograph Co., Inc., 2001 U.S. Dist. LEXIS 16062
　　(S.D.N.Y. Sept. 18, 2001) ........................................................................................4, 5

Makarova v. United States, 201 F.3d 110 (2d Cir. 2000) ................................................5

Mason v. CIGNA Ins. Co., 165 F.3d 14 (2d Cir. 1998) ..................................................17

McAnany v. Angel Records, Inc., 216 F. Supp. 2d 335 (S.D.N.Y. 2002)........................9

McIntyre v. Manhattan Ford, 256 A.D.2d 269 (1st Dep't 1998) .............................17, 18

Miller v. Citicorp, 1997 U.S. Dist. LEXIS 2395 (S.D.N.Y. Mar. 4, 1997) ....................10

Monell v. Department of Social Services, 436 U.S. 658 (1978) ....................................14

Murphy v. American Home Prod. Corp., 58 N.Y.2d 293 (1983) ...................................18

Oparaji v. City of New York, 1998 U.S. App. LEXIS 14967 (2d Cir. 1998) ..........14, 15

Patane v. Griffin, 164 A.D.2d 192 (3d Dep't 1990), appeal denied,
　　77 N.Y.2d 810 (1991) ..................................................................................................25

Patrowich v. Chemical Bank, 98 A.D.2d 318 (1984) ....................................................10

Pauk v. Board of Tr., 119 Misc. 2d 663 (Sup. Ct. New York Cty. 1983) ......................11

Ponticelli v. Zurich Am. Ins. Group, 16 F. Supp. 2d 414 (S.D.N.Y. 1998) ..................19

Reeves v. Continental Equities Corp., 767 F. Supp. 469 (S.D.N.Y. 1991) ..............19, 20

Rendell-Baker v. Kohn, 457 U.S. 830 (1982).........................................................12, 13

Richardson v. Kruchko & Fries, 966 F.2d 153 (4th Cir. 1992) ......................................5

Rothman v. Gregor, 220 F.3d 81 (2d Cir. 2000)............................................................8

San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959) ...........2, 3, 4, 5, 6

Sears Roebuck & Co. v. San Diego County Dist. Council of Carpenters,
　　436 U.S. 180 (1978)...................................................................................................5, 6

Sincropi v. Bennett, 92 A.D.2d 309 (2d Dep't 1983)......................................................9

Sinha v. New York City Dep't of Educ., 2004 U.S. Dist. LEXIS 7081
　　(E.D.N.Y. Apr. 26, 2004)..............................................................................................7

Steele v. Polymer Research Corp., 1987 U.S. Dist. LEXIS 5270
(S.D.N.Y. June 18, 1987)..................................................................................22

Steinhilber v. Alphonse, 68 N.Y.2d 283 (1986) ............................................................21

Tasso v. Platinum Guild Int'l, 1998 U.S. Dist. LEXIS 18908 (S.D.N.Y. Dec. 3, 1998) ...............22

Thomas v. Roach, 165 F.3d 137 (2d Cir. 1999) ............................................................16

Torres v. Knapich, 966 F. Supp. 194 (S.D.N.Y. 1997)......................................................14

Treppel v. Biovail Corp., 2004 U.S. Dist. LEXIS 20714
(S.D.N.Y. Oct. 15, 2004) ...................................................................................24

Twin Labs, Inc. v. Weider Health & Fitness, 900 F.2d 566 (2d Cir. 1990) ................................23

United Bhd. of Carpenters v. Scott, 463 U.S. 825 (1983) ...................................................15

United States v. Price, 383 U.S. 787 (1966) ...............................................................12

Wait v. Beck's N. Am., Inc., 241 F. Supp. 2d 172 (N.D.N.Y. 2003)......................................21, 22

Weinberg v. Mizuho Capital Mkt., Corp., 2003 U.S. Dist. LEXIS 19329
(S.D.N.Y. Oct. 29, 2003) ...............................................................................7, 10

Weise v. Syracuse Univ., 522 F.2d 397 (2d Cir. 1974) ....................................................13

Weldy v. Peidmont Airlines, Inc., 985 F.2d 57 (2d Cir. 1993)..............................................19

Williams v. Varig Brazilian Airlines, 169 A.D.2d 434 (1st Dep't 1991)......................................21

Winderbaum v. Winderbaum, 39 Misc. 2d 478 aff'd, 20 A.D.2d 626
(1st Dep't 1963)..........................................................................................23

## PRELIMINARY STATEMENT

Defendants New School University and Eugene Lang College[1] (collectively "New School" or the "University") submit this memorandum of law in support of their motion pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss the Complaint in its entirety.

Plaintiff is a full-time professor at the University who also served as the Chair of the Theater Department. Plaintiff filed his Complaint on or about July 1, 2005 in the Supreme Court of the State of New York, County of New York. The University removed the matter to this Court on August 10, 2005.

In his Complaint, plaintiff contends that, as a result of his having testified before the National Labor Relations Board ("NLRB") at a hearing to determine whether certain University faculty members "would be certified as a collective bargaining unit," the University took away his Chair position, although he continues to be employed as a full-time professor with no reduction in salary or benefits. (Complaint at ¶ 22). Plaintiff alleges that the University's decision to remove him from the Chair position was "retaliatory" and "in violation of the National Labor Relations Act." (Id. at ¶¶ 32, 34).

In fact, on July 7, 2005, just days after filing the Complaint, plaintiff filed with the NLRB an unfair labor practice charge against the University in which he alleged that the University "discriminated" against him in violation of Section 8(a)(4) of the National Labor Relations Act ("NLRA") "because he gave testimony under the [NLRA], by inter alia, removing him as chair or director of the theater department or program and by interfering with his ability to obtain reappointment." A copy of the referenced unfair labor practice charge is attached to the accompanying Declaration of James P. O'Brien, Jr. ("O'Brien Dec.") at Ex. A.

---

[1]   Although named as a defendant, Eugene Lang College is a division of defendant New School University. It is not an independent legal entity and is not amenable to suit.

In accordance with the United States Supreme Court's decision in <u>San Diego Building Trades Council v. Garmon</u>, 359 U.S. 236 (1959) and its progeny, the NLRB has primary jurisdiction over plaintiff's claims and this Court lacks subject matter jurisdiction requiring that the Complaint be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).  Moreover, even in the remote event that it is determined that this Court does have jurisdiction, the Complaint nonetheless should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## THE COMPLAINT ALLEGATIONS

For purposes of this motion, there is no need to dispute the allegations of the Complaint, which are briefly summarized below for the Court's convenient reference.

Plaintiff began his employment as a full-time faculty member in or about 1986. (Complaint at ¶ 5).  According to plaintiff, he was appointed to the position of Chair of the University's Theater Department in or around 1989, following the resignation of the former Chair.  (<u>Id.</u> at ¶¶ 6-13).  Plaintiff alleges that he was reappointed in 1992 and "was thereafter consistently reappointed as a full-time faculty member to serve as the Chair of the Theater Department."  (<u>Id.</u> at ¶¶ 14-16).  Plaintiff claims that in 2002, he and the University "entered into an agreement … appointing him for a term to run though June 30, 2007, during which contract period he was to serve as the Chair/Director of the Theater Department."  (<u>Id.</u> at ¶ 19).

Notwithstanding plaintiff's Complaint allegations, the "agreement" to which plaintiff refers provides only that he was reappointed as a "full-time faculty member at Eugene Lang College, effective July 1, 2002 to June 30, 2007."  Copies of the University's Board of Trustees notice of appointment and a letter to plaintiff regarding the appointment are attached to the O'Brien Dec. at Ex. B.

Plaintiff alleges that in 2003, two unions conducted a drive to unionize certain faculty members at the University.  (Id. at ¶ 21).  On August 21, 2003, plaintiff was called by the unions to testify at an NLRB hearing which was scheduled "to determine whether faculty with the [University] would be certified as a collective bargaining unit."  (Id. at ¶ 22).  Plaintiff states that the University's "displeasure" with him for testifying on this subject "became apparent from the extremely hostile questioning [plaintiff] was subjected to by [the University's] attorney."  (Id. at ¶ 23).  Plaintiff contends that during the NLRB hearing he was subjected to repeated attacks on his "name and reputation" and his "integrity."  (Id. at ¶¶ 23, 25).  Plaintiff alleges that "[t]hese attacks made transparent the [University's] considerable anger, malice and ill-will toward [him] for his testifying before the NLRB."  (Id. at ¶ 28).  According to plaintiff "despite the [University's] vitriolic and aggressive campaign to defeat the unionizing efforts, in 2004 the collective bargaining unit was certified by the NLRB."  (Id. at ¶ 29).

Plaintiff states that, on or about March 4, 2005, he was "abruptly informed" by Jonathan Veitch, the Dean of the University's Eugene Lang College, that he was "being stripped of his Chair position" and was being replaced by a "halftime employee."  (Id. at ¶ 31).  According to plaintiff, Dean Veitch told plaintiff he would no longer serve as Chair of the Theater Department because "Central Administration" refused to work with plaintiff.  (Id. at ¶ 32).  Plaintiff alleges that this refusal to work with him, and the decision to take away his Chair responsibilities, resulted from the testimony he gave at the NLRB.  (Id. at ¶ 33).

## ARGUMENT

### POINT I

#### THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THE CLAIMS ARE WITHIN THE EXCLUSIVE JURISDICTION OF THE NLRB

This case is squarely governed by the United States Supreme Court's decision in San

Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959).  In Garmon, the Supreme Court

held that Congress intended the NLRB to be the only tribunal that would adjudicate the

lawfulness of conduct that is subject to federal labor law regulation.  In particular, the Court

recognized the need to avoid the "danger of conflict between power asserted by Congress and

requirements imposed by state law."  Id. at 244.  In order to avoid this danger of conflict and the

"potential frustration of national purposes," the Supreme Court held that "when an activity is

arguably subject to Section 7 or 8 of the [NLRA], the states as well as the federal courts must

defer to the exclusive competence of the [NLRB] if the danger of state interference with national

policy is to be averted."  Id. at 245.

No court may regulate conduct that is arguably protected or prohibited by the NLRA;

instead, only the NLRB may regulate such conduct.  The purpose of Garmon, or primary

jurisdiction, preemption is to avoid conflicting regulation by various bodies over substantive law

and to protect the exclusive and primary jurisdiction of the NLRB.  See Campbell v. McLean

Trucking Co. & Chauffeurs, 592 F. Supp. 1560, 1562-63 (E.D.N.Y. 1984).  Garmon preemption

guards against inconsistent rulings which will result if it is left to tribunals other than the NLRB

to decide issues which arise out of, or arguably arise out of, the NLRA.  See e.g. Lopresti v.

Merson, MacNaughton Lithograph Co., Inc., 2001 U.S. Dist. LEXIS 16062, at *28 (S.D.N.Y.

Sept. 18, 2001) (citing Int'l Longshoremen's Assoc. v. Davis, 476 U.S. 380, 389-90 (1986)).

If the conduct at issue is either protected or prohibited by the NLRA, the suit is

presumptively preempted.  Campbell, 592 F. Supp. at 1563.  Indeed, the Second Circuit has

noted that both the comprehensiveness of the NLRA and the assignment of jurisdiction to a

specialized agency, the NLRB, gives the NLRB exclusive jurisdiction to adjudicate conduct that

arguably violates Section 8 of the NLRA. Caldwell v. American Basketball Ass'n, Inc., 66 F.3d 523, 527 (2d Cir. 1995).

Here, plaintiff alleges that he was removed from his Chair position because he provided testimony which was unfavorable to the University at an NLRB hearing. Section 8(a)(4) of the NLRA provides that it shall be an unfair labor practice for an employer to "discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this Act." 29 U.S.C. §158(a)(4). Thus, the precise conduct that plaintiff attributes to the University, alleged retaliation for his testimony before the NLRB, is specifically prohibited by the NLRA. Indeed, plaintiff himself has an unfair labor practice charge pending with the NLRB in which he challenges as violative of NLRA Section 8(a)(4) the University's decision that he should no longer serve as Chair of the Theater Department. (See O'Brien Dec. at Ex. A).[2] Since the conduct about which plaintiff complains is expressly prohibited by the NLRA, Garmon preemption applies, the NLRB has exclusive jurisdiction over the matter and the Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

Plaintiff cannot avoid the reach of Garmon preemption simply by taking what is clearly an unfair labor practice charge and dressing it up under multiple state and federal law legal theories. "A plaintiff cannot avoid preemption by labeling an unfair labor practice charge as state-law torts." See Richardson v. Kruchko & Fries, 966 F.2d 153, 158 (4th Cir. 1992). "When the same controversy may be presented to the state court or the NLRB, it must be presented to the Board." Id. (quoting Sears Roebuck & Co. v. San Diego County Dist. Council of Carpenters,

---

[2]   The Court may consider evidence outside the pleadings, such as plaintiff's NLRB unfair labor practice charge, for the purpose of addressing a Rule 12(b)(1) motion to dismiss. See LaGoy v. Corr. Med. Serv., 358 F. Supp. 2d 58, 61 (N.D.N.Y. 2005). Moreover, plaintiff has the burden of proving the court's jurisdiction by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Thus, the standard used to evaluate a Rule 12(b)(1) motion is similar to that used for summary judgment under Fed. R. Civ. P. 56. See Lopresti., 2001 U.S. Dist. LEXIS at *12.

436 U.S. 180, 202 (1978)).  Indeed, the federal preemption doctrine provides that a disputant in a labor controversy cannot file an action in a state court based upon a common law or statutory ground if the facts essential to the state court cause of action are the same as those essential to an unfair labor practice complaint.  See Carter v. Sheet Metal Workers' Int'l Ass'n, 724 F.2d 1472, 1477 (11th Cir. 1984) (reversing the judgment in favor of plaintiff holding that the state tort claim was preempted because the basis of the jury verdict was the same conduct that would support an unfair labor practice complaint before the NLRB).

Here, the premise for each of the causes of action in the Complaint is that plaintiff was retaliated against because he gave testimony under the NLRA.  The connection between these allegations and the NLRA is obvious and, as noted, plaintiff himself recognized the connection when he filed his unfair labor practice charge.  Indeed, in that unfair labor practice charge, plaintiff specifically contends that, when it undertook the same action that he believes supports his claims before this Court, the University "engaged in unfair labor practices with the meaning of section 8(a)(1) and (4) of the [NLRA]."  In order for this Court to adjudicate plaintiff's causes of action, it will be required to undertake the same inquiry as the NLRB will undertake when it adjudicates plaintiff's unfair labor practice charge to ascertain whether there has been a violation of the NLRA.  Garmon and its progeny dictate that, under these circumstances, and in the interest of uniform application of the federal labor laws, the Court defer to the NLRB.

The University recognizes that Garmon preemption is not without exceptions.  Indeed, the Supreme Court has not employed preemption where (1) the issues only peripherally concern the NLRA, (2) the issues touch interests deeply rooted in local feeling or (3) judicial supervision will not disserve the federal interests involved.  See e.g. Garmon, 359 U.S. at 243-45.  Here, however, plaintiff's state and federal law claims all stem from his allegation that he was removed

from his Chair position because he testified before the NLRB.  Since such action, if proven, is prohibited by the NLRA, the referenced exceptions have no application and the matter is within the exclusive jurisdiction of the NLRB.

## POINT II

### EVEN IF THE COURT DETERMINES THAT IT HAS JURISDICTION OVER PLAINTIFF'S CLAIMS, THEY EACH MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

Even if the Court has subject matter jurisdiction over plaintiff's claims, the Complaint nonetheless must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Dismissal under Rule 12(b)(6) is appropriate here because it is "beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Sinha v. New York City Dep't of Educ., 2004 U.S. Dist. LEXIS 7081, *4 (E.D.N.Y. Apr. 26, 2004).

### A.   Plaintiff's Contract Causes of Action Fail

In his first cause of action, plaintiff alleges that by removing and/or excluding him from the Chair position, the University breached a "contractual obligation" and "also breached the implied covenant of good faith and fair dealing."  (Complaint at ¶¶ 40, 41).

To state a claim for breach of contract under New York law, a plaintiff must allege (1) the existence of a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.  See Weinberg v. Mizuho Capital Mkt. Corp., 2003 U.S. Dist. LEXIS 19329, ** 20, 21 (S.D.N.Y. Oct. 29, 2003).  To state a claim for contractual breach, the essential terms and provisions of an alleged contract must be set forth in the complaint or attached thereto. See Kosson v. Algaze, 84 N.Y.2d 1019, 1020-21 (1995) (holding that conclusory allegations of a contract are insufficient to show the existence of a contract).  At the very least, the complaint in a breach of contract action must set forth the terms of the agreement upon which liability is

predicated.  See Bhagat v. Quattrochi, 2004 U.S. Dist. LEXIS 24584, * 8 (S.D.N.Y. Dec. 8,

2004).  "In an action to recover damages for breach of contract, the complaint must, inter alia, set

forth the terms of the agreement upon which liability is predicated, either by express reference or

by attaching a copy of the contract."  See id. at *8.  In addition to the terms of the contract, the

plaintiff must allege each element of the purported breach and the resultant damages.  Id.

The Complaint fails to satisfy these basic pleading requirements.  The Complaint does

not contain the terms of the contract which the University purportedly breached, nor did Plaintiff

attach the alleged contract to the Complaint.  Indeed, plaintiff has failed to point to any contract

which would prevent the University from removing him from the position of Chair of the

Theater Department, other than to vaguely assert that he and the University entered into an

unspecified "agreement . . . appointing him for a term to run through June 30, 2007, during

which contract period he was to serve as the Chair/Director of the Theater Department."

(Complaint at ¶ 19).  Although it is not clear from the Complaint, presumably plaintiff is

referring to his 2002 appointment notice, a copy of which is attached at Ex. B.[3]  That document,

however, makes absolutely no reference to an obligation on the part of the University to continue

to employ Plaintiff as Chair of the Theater Department and therefore cannot support a breach of

contract claim.  In addition, plaintiff has failed to allege the damages he has sustained as a result

of the University's alleged breach of contract.  Under these circumstances, plaintiff's claim for

---

[3]    The Court may consider the referenced appointment notice on this motion to dismiss because it is well-settled
that a complaint is deemed to include "documents that the plaintiffs either possessed or knew about and upon
which they relied in bringing the suit."  Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000).  Thus, when
deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents attached to the
complaint as exhibits or incorporated in it by reference.  See Brass v. American Film Techs, Inc., 987 F.2d 142,
150 (2d Cir. 1993).

breach of contract must fail.[4]

In his second cause of action, plaintiff contends that the Chair position he held at the University's Eugene Lang College is "unique," that "monetary relief alone will not adequately compensate Plaintiff for his loss" and that he is entitled to "specific performance requiring [the University] to reinstate him to the Chair Position." (Complaint at ¶¶ 45-47).

This cause of action must fail because specific performance is an equitable remedy for a purported breach of contract, and is not a separate cause of action. See Cho v. 401-403 57th Street Realty Corp., 300 A.D.2d 174, 175 (1st Dep't 2002). Moreover, inasmuch as plaintiff's breach of contract claim is deficient, plaintiff's request for the remedy of specific performance is likewise deficient. Finally, it is well-established that specific performance is not available to remedy breaches of common law employment contracts. See Sincropi v. Bennett, 92 A.D.2d 309, 314 n.2 (2d Dep't 1983) ("Indeed, as specific performance, the remedy of reinstatement is simply not available under New York contract principles" for breaches of common law employment contracts). For all of these reasons, the second cause of action must be dismissed.

Plaintiff's third cause of action, in which he seeks a permanent injunction against the University, likewise is deficient because it is a request for a remedy and not a separate cause of action. See McAnany v. Angel Records, Inc., 216 F. Supp. 2d 335, 338 (S.D.N.Y. 2002) (holding that request for permanent injunction was a remedy and not a separate cause of action).

---

[4]   Since plaintiff has not sufficiently alleged a contractual relationship, his allegation that the University breached a covenant of good faith and fair dealing is of no legal import. "There being no contractual relationship, neither can there be any 'covenant of good faith and fair dealing' implied which itself is based on the existence of a legal contractual obligation." Four Winds of Saratoga, Inc. v. Blue Cross & Blue Shield of Cent. New York, Inc., 241 A.D.2d 906, 907 (3d Dep't 1997).

**B.**    **Plaintiff's Promissory Estoppel Claim Fails**

In his fourth cause of action, plaintiff alleges that he relied to his detriment on certain

unspecified promises of certain unidentified individuals who purportedly advised him that he

would remain in the Chair position through 2007.  (Complaint at ¶¶ 51-54).  As an initial matter,

it is well-settled that "New York does not recognize promissory estoppel as a valid cause of

action in the employment context."  Weinberg, 2003 U.S. Dist. LEXIS 19329 at **20, 21; see

also Miller v. Citicorp, 1997 U.S. Dist. LEXIS 2395, *28 (S.D.N.Y. Mar. 4, 1997).

Moreover, even in contexts in which promissory estoppel is recognized, a plaintiff must

allege a "(1) clear and unambiguous promise; (2) reasonable and foreseeable reliance by the

party to whom the promise is made; and (3) injury sustained by the party asserting the estoppel

by reason of his reliance."  Id.  Here, plaintiff has not articulated a clear and unambiguous

promise.  Indeed, as noted, he has not even identified the individuals who allegedly made

promises to him.  Nor has plaintiff alleged the injury he sustained as a result of his alleged

reliance on the purported promises.  Instead, plaintiff merely alleges "that he would have sought

other opportunities had he not been promised the Chair Position during the term of the Contract."

(Complaint at ¶ 53).  However, vague and conclusory allegations of reliance such as those

presented here are not sufficient to state a claim for promissory estoppel.  See Patrowich v.

Chemical Bank, 98 A.D.2d 318, 323 (1984).

**C.**    **Plaintiff Has Failed to Adequately Plead His Article 78 Cause of Action**

Plaintiff denominates his fifth cause of action "Article 78 Petition for Certiorari and

Prohibition."  Plaintiff proceeds to allege that the University's "determination to remove plaintiff

from the Chair position was arbitrary and capricious, an abuse of discretion, contrary to law, and

in violation of lawful procedures."  (Complaint at ¶ 56).

G279122.3

Article 78 of New York's Civil Practice Law and Rules provides a uniform procedure for parties seeking "relief previously obtained by writs of certiorari, mandamus or prohibition." NY CPLR § 7801.  Article 78 proceedings "are typically the avenue for parties challenging administrative actions by governmental agencies or by the decision making bodies of private entities."  Clarke v. Columbia Univ., 1996 U.S. Dist. LEXIS 15620, *6 (S.D.N.Y. Oct. 23, 1996).

Here, plaintiff fails to identify precisely how the University's action in removing him from the Chair position was "arbitrary and capricious, an abuse of discretion, contrary to law, and in violation of lawful procedures."  Indeed, plaintiff points to no University procedures, by-laws or other requirements which the University allegedly violated that would render its actions in any sense improper.

Moreover, there is no indication whatsoever of how this cause of action is any different than plaintiff's causes of action for breach of contract.  "It is well settled that Article 78 proceedings in the nature of mandamus will not lie to enforce private rights based on contract." Gray v. Canisius Coll., 76 A.D.2d 30, 36 n.3 (4th Dep't 1980); see also Pauk v. Board of Tr., 119 Misc. 2d 663, 666 (Sup. Ct. New York Cty. 1983) (holding that it is clear that one "may not have vindication of his contractual rights in [an Article 78] proceeding").

Here, given plaintiff's failure to articulate the basis for pursuing a cause of action pursuant to Article 78, this cause of action should be dismissed.

### D.    Since the University is a Private Entity, Plaintiff's Sixth Cause of Action, Seeking Relief Pursuant to 42 U.S.C. § 1983, Must Be Dismissed

In his sixth cause of action, plaintiff alleges that the University violated his rights under 42 U.S.C. § 1983 when it "directly interfered with plaintiff's rights of association, speech, and other constitutionally protected activities in violation of his constitutional rights to equal

protection of the laws, rights of association, right of free speech and right to due process under the First, Fifth and Fourteenth Amendments of the United States Constitution." (Complaint at ¶¶ 61-62). This cause of action must fail because the University is a private entity and is not a state actor and therefore is not amenable to suit pursuant to 42 U.S.C. § 1983. Moreover, even if New School were amenable to suit under Section 1983, the conclusory complaint allegations regarding a single alleged incident are insufficient to state a claim for institutional liability.

In order to be liable under Section 1983, a defendant must be shown to have adversely affected a constitutionally protected life, liberty or property interest, and it must have acted under color of state law. "In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982)(quoting United States v. Price, 383 U.S. 787, 794 n.7 (1966)). "It is axiomatic that the First and Fourteenth Amendments, and § 1983, apply only to state actors." Leeds v. Meltz, 85 F.3d 51, 54 (2d Cir. 1996).[5]

New School is a private educational institution. Nowhere in his Complaint does plaintiff even remotely suggest that New School is, in any sense, a public entity or a state actor. Instead, plaintiff seeks to hold New School liable pursuant to Section 1983 based on the conclusory allegation that New School's "existence and operations are extensively controlled, funded and involved by and under the provisions of local, state and federal laws, and subject to the supervision of local, state and federal governmental authorities to such an extent as to be acting under color of state law." (Complaint at ¶ 59). Even assuming, for purposes of this motion, that this allegation is accurate, it will not support plaintiff's Section 1983 claim.

---

[5]   As noted, plaintiff also has a claim for an alleged violation of his due process rights under the Fifth Amendment pursuant to Section 1983. That claim too is infirm because the Fifth Amendment's due process clause "protects citizens against only federal government actors." Dusenbery v. United States, 534 U.S. 161, 167 (2002).

The Supreme Court has specifically held that private educational institution are not state actors merely because they receive financial assistance from, and are extensively regulated by, governmental entities. Rendell-Baker, 457 U.S. at 832. In Rendell-Baker, the Supreme Court determined that a termination of employment by a privately owned and operated school did not constitute state action, even though the school was subject to detailed state regulation and virtually all of its income was derived from governmental funding. Id.; see also Leeds, 85 F.3d at 54 ("Extensive regulation and public funding, either alone or taken together, will not transform a private actor into a state actor; instead, the state must have exercised its coercive power over, or provided significant encouragement to, the defendant.").

Courts in this district routinely dismiss Section 1983 claims against private colleges and universities that are premised on the governmental regulation of the institutions or the institutions' receipt of governmental funding. See Keady v. Nike, Inc., 116 F. Supp. 2d 428, 433 (S.D.N.Y. 2000) (dismissing Section 1983 claim because "mere financial assistance from a public authority to a private institution does not constitute state action"); see also Altschuler v. University of Penn. Law Sch., 1997 U.S. Dist. LEXIS 3248, *44 (S.D.N.Y. Mar. 21, 1997).

Moreover, in order to state a claim pursuant to Section 1983, plaintiff must allege that the "state" was somehow involved in the particular action about which he complains. Stated alternatively, state action is not present unless "'the state [is] involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff, but with the activity that caused the injury.'" Weise v. Syracuse Univ., 522 F.2d 397, 405 (2d Cir. 1974); see also Altschuler, 1997 U.S. Dist. LEXIS 3248 at *44 (dismissing Section 1983 claim where "[t]here is no allegation that the state coerced the university defendants' action that plaintiff challenges, or that the state significantly encouraged those actions in any way"). Here, plaintiff has made no

allegation that would remotely suggest that the state or any state official was involved with the determination that plaintiff should no longer serve in the Chair position.

Finally, the Section 1983 claim also must be dismissed because plaintiff has offered no allegations that the challenged action resulted from an institutional custom or policy. A municipality, or an institution, cannot be held liable under Section 1983 based solely on a theory of respondeat superior. See Covington v. City of New York, 436 U.S. 658, 690 (1978); Oparaji v. City of New York, 1998 U.S. App. LEXIS 14967, *3 (2d Cir. 1998) (citing Monell v. Department of Social Services, 436 U.S. 658 (1978)). Rather, to state a claim for institutional liability under Section 1983, a plaintiff must allege that the constitutional violation resulted from an institutional custom or policy. Oparaji, 1998 U.S. App. LEXIS 14967 at *3; Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993). Absent factual allegations that employees acted pursuant to such a policy or custom, a Section 1983 claim is not legally cognizable. See Torres v. Knapich, 966 F. Supp. 194, 196 (S.D.N.Y. 1997); Green v. New York City Dep't of Corr., 1999 U.S. Dist. LEXIS 5221, *9 (S.D.N.Y. Apr. 1, 1999).

Here, apart from vaguely asserting that plaintiff "has been denied rights, property and privileges and has suffered . . . as a result of defendants' conduct, practices and policies," in his Complaint plaintiff does not allege a single fact from which one could infer the existence of a policy or practice. Instead, plaintiff simply describes the single isolated incident of the University determining that he should no longer serve in the Chair position. Plaintiff, however, must show "something more than a single incident" to establish Section 1983 liability. See Carlisle v. City of Yonkers, 1996 U.S. App. LEXIS 30973, *4 (2d Cir. Nov. 29, 1996); Dwares, 985 F.2d at 98. A custom or policy will not be inferred from a single incident unless that incident "was so severe or out of the ordinary as to suggest a municipal policy or custom in and

of itself." See Oparaji, 1998 U.S. App. LEXIS 14967, at *4.  Here, plaintiff's claim arises out of a single alleged incident, which simply does not give rise to an inference of a policy or custom.

> **E.**     **Plaintiff's Seventh and Eighth Causes of Action Under Sections 1985 and 1986 Fail**

In his seventh and eighth causes of action, plaintiff contends that the University engaged in a conspiracy to violate his civil rights in contravention of 42 U.S.C. Sections 1985(3)[6] and Section 1986.  Plaintiff contends that the University engaged in a conspiracy with some unidentified individuals or entities to remove "plaintiff from the Chair Position as a result of his exercise of constitutionally protected activities."  (Complaint at ¶ 70).

To prove a conspiracy in violation of Section 1985(3), a plaintiff must show "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).  The Supreme Court specifically has declined to extend the reach of Section 1985(3) to include conspiracies based on "economic or commercial views, status or activities."  See e.g., Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996) (citing United Bhd. of Carpenters v. Scott, 463 U.S. 825, 837-39 (1983)).

Here, plaintiff has not alleged that that any action was taken against him because of his race or because of his membership in a class that has been recognized as protected under Section 1985(3).  For this reason alone, the Section 1985(3) claim must be dismissed.  See Graham, 89 F.3d at 82 (dismissing Section 1985(3) conspiracy claim premised on the plaintiff's leadership role in protesting the change in work conditions).

In addition, plaintiff's Section 1985(3) claim is too conclusory to survive a motion to dismiss.  It is well-settled that a plaintiff must "provide some details of time and place and the

---

[6]    Plaintiff does not specify which provision of Section 1985 he is relying on in his seventh cause of action.  Since, however, plaintiff alleges a "conspiracy for the purpose of depriving plaintiffs [sic] of equal protection of the laws," the University assumes that the claim is for a violation of Section 1985(3).  (Complaint at ¶65).

alleged effect of the conspiracy. Thus, complaints containing only conclusory, vague or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." Dwares, 985 F.2d at 100; see also Boddie v. Schneider, 105 F.3d 857, 862 (2d Cir. 1997); Agugliaro v. Brooks Bros., Inc., 802 F. Supp. 956, 961 (S.D.N.Y. 1992) (stating that to maintain a Section 1985(3) claim a plaintiff must "set forth with certainty facts showing particularly what a defendant . . . did to carry the conspiracy into effect").

Here, apart from alleging the existence of a conspiracy, apparently between the University and some unnamed others, plaintiff offers no allegations regarding the nature of the conspiracy, the actions taken in furtherance of the conspiracy, when they were taken or by whom they were taken. This is woefully insufficient to make out a Section 1985(3) claim. See Thomas v. Roach, 165 F.3d 137, 147 (2d Cir. 1999) (a plaintiff asserting a Section 1985(3) conspiracy claim must allege "with at least some degree of particularity, overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy").

Moreover, it is well established that there can be no conspiracy under Section 1985(3) where the "persons" alleged to be involved in the conspiracy are a single entity and its employees and agents. Girard v. 94th St. & Fifth Ave. Corp., 530 F.2d 66, 70-71 (2d Cir. 1976). In these circumstances, the alleged conspiratorial conduct is essentially a single act within the scope of their employment. Girard, 530 F.2d at 71. Here, since all the acts which comprise the alleged conspiracy relate to actions taken at the University by University employees within the scope of their employment, the intra-corporate conspiracy doctrine provides yet another basis to defeat plaintiff's Section 1985(3) claim. Agugliaro, 802 F. Supp. at 962.

Finally, the Supreme Court has held that Section 1985(3) does not apply to private conspiracies that are "aimed at a right that is by definition a right only against state interference." See Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 278 (1993). That is, the right that a plaintiff seeks to protect pursuant to Section 1985(3) must be one which is protected against private, as opposed to state, action. Here, the rights plaintiff seeks to protect are the rights to "equal protections of the law", "due process of law", "association" and "free speech" and other, unidentified, "constitutional rights." (Complaint at ¶ 66). Inasmuch as these are "rights" which may not be abridged by state action alone, plaintiff's Section 1985(3) claim against New School, a private entity, must fail.

In addition, plaintiff's Section 1986 conspiracy claim should be dismissed. Section 1986 establishes liability as to those persons who knowingly fail to prevent a conspiracy to violate an individual's civil rights under Section 1985(3). Chandie v. Whelan, 21 F. Supp. 2d 170, 178 (E.D.N.Y. 1998). A Section 1986 claim must be predicated upon a valid Section 1985(3) claim. Mason v. CIGNA Ins. Co., 165 F.3d 14, 21 (2d Cir. 1998). Since plaintiff has not adequately pleaded a Section 1985(3), his Section 1986 claim also fails.

## F.    Plaintiff's Ninth Cause of Action, For Intentional Infliction of Emotional Distress, Fails as a Matter of Law

The requirements for stating a claim for intentional infliction of emotional distress in New York are "rigorous[] and difficult to satisfy." Howell v. New York Post Co., 81 N.Y.2d 115, 122 (1993). Indeed, "intentional infliction of emotional distress is a theory of recovery that is to be invoked only as a last resort." McIntyre v. Manhattan Ford, 256 A.D.2d 269, 270 (1st Dep't 1998). To establish this claim, four elements must be present: (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional

G279122.3                                      - 17 -

distress. Id. at 121.  In Howell the Court of Appeals noted that "of the intentional infliction of emotional distress claims considered by this Court, every one has failed because the alleged conduct was not sufficiently outrageous." Id. at 122.

Simply stated, plaintiff has failed to state a claim for the intentional infliction of emotional distress because the conduct about which he complains was not extreme and outrageous.  To establish extreme and outrageous conduct, the conduct alleged must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Murphy v. American Home Prod. Corp., 58 N.Y.2d 293, 303 (1983).  Indeed, as one court recently held, "the mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." Davis v. City of New York, 2000 U.S. Dist. LEXIS 18520, ** 34, 36 (S.D.N.Y. Dec. 27, 2000).

It is difficult to fathom how the actions about which plaintiff complains, which essentially relate to the University's determination that he should no longer serve as Chair of its Theater Department, could in any sense be considered severe and outrageous.  In fact, in a recent decision under Connecticut law, the Second Circuit upheld the dismissal of a Yale University faculty member's intentional  infliction of emotional distress claim under circumstances similar to those at issue here.  Franco v. Yale Univ., 80 Fed. Appx. 707, 709-10 (2d Cir. 2003).  In Franco, the plaintiff alleged that Yale's decision "not to reappoint him, its alleged marginalizing of him, and the allegedly defamatory remarks his colleagues made to potential employers . . . all constituted outrageous conduct that inflicted extreme mental distress."  The Court held that such conduct "did not exceed all bounds of what is tolerated in a decent society." Id. at 709-10.

Moreover, New York courts have dismissed intentional infliction of emotional distress

claims predicated on conduct which, when compared to that alleged in this matter, is astoundingly inappropriate. Ponticelli v. Zurich Am. Ins. Group, 16 F. Supp. 2d 414 (S.D.N.Y. 1998) (finding defendant's yelling at plaintiff, calling her "stupid" and "foolish", and "fucking bitch" and pushing her into a filing cabinet did not constitute extreme or outrageous conduct); La Duke v. Lyons, 250 A.D.2d 969, 972-73 (3d Dep't 1998) (upholding dismissal of intentional infliction of emotional distress claim involving employer's falsely accusing nurse of euthanizing patients, terminating her, and forwarding allegations to the District Attorney's office).

Simply stated, the alleged conduct was not extreme and outrageous under New York law, and plaintiff's intentional infliction of emotional distress claim should be dismissed.

### G. The Defamation Claim Fails Because It Was Not Pleaded With Particularity and The Challenged Comments Are Opinion

Plaintiff's tenth cause of action, for defamation, should be dismissed because if does not meet the requirements for pleading a claim of defamation and because the alleged defamatory comments are non-actionable opinion.

In order to state a claim for defamation under New York law, a plaintiff must plead (1) an oral or written defamatory statement of fact; (2) regarding the plaintiff; (3) published to a third party by the defendant; and (4) injury to the plaintiff. Weldy v. Peidmont Airlines, Inc., 985 F.2d 57, 61 (2d Cir. 1993). In pleading a defamation claim, the plaintiff must allege that the defendant published the defamatory words and must set forth the time and manner of publication and the person to whom the allegedly libelous publication was made. See Reeves v. Continental Equities Corp., 767 F. Supp. 469 (S.D.N.Y. 1991).

Here, plaintiff merely alleges that "on information and belief, defendants [sic] officers, deans, board members and others in positions of authority with defendants made false and defamatory written and oral statements and communicated or otherwise published them to each

other, to employees of defendants, to students and to others concerning plaintiff, including, but

not limited to words or words to the effect that plaintiff was difficult, ineffective, unsuited for the

Chair Position, a trouble make [sic], incompetent, given to distorting facts and events, and an

instigator." (Complaint at ¶ 80).

Plaintiff does not specify which individuals allegedly made which comments; nor does he

allege with any specificity to whom the various alleged comments were made. Moreover, there

are no allegations pertaining to the time of the alleged statements which would enable the

University to assess whether the claims are timely.

Courts in this Circuit routinely have held that defamation claims must be predicated upon

sufficiently detailed allegations in order to enable the defendant to respond. See e.g., Engel v.

Hawkins, 1996 U.S. Dist. LEXIS 18547, *5 (S.D.N.Y. Dec. 12, 1996). For instance, in Reeves,

the plaintiff's sole allegation in support of a slander claim was that "defendants . . . told

prospective employers of plaintiff or their agents that plaintiff was discharged for misconduct, as

defendants alleged to the New York State Department of Labor . . ."  767 F. Supp at 473.  In

dismissing the plaintiff's slander claim, the court found that although the plaintiff sufficiently

identified the slanderous statement made, "he inadequately identif[ied] when the statements were

made . . or to whom they were made" so that the defendant could "adequately prepare a

defamation defense." Id.  In addition, the court articulated that the dates that the defendant

allegedly defamed the plaintiff were not pleaded with the requisite particularity to determine if

the defamation claims were time barred.  Id.  Here, plaintiff's defamation claims likewise are not

predicated upon factual allegations sufficiently detailed to enable defendants to frame a defense.

In addition, the alleged defamatory statements, even if made, are absolutely protected

statements of opinion. New York law absolutely protects statements of opinion such that they can

never be defamatory.  See e.g., Celle v. Filipino Rep. Enter. Inc., 209 F.3d 163, 178 (2d Cir. 2000);

see also Steinhilber v. Alphonse, 68 N.Y.2d 283, 289 (1986).  Expressions of opinion are non-

actionable based on the constitutional protection accorded to the free expression of ideas, even if

defamatory, no matter how negative or erroneous the opinion may be.  See Epstein v. Board of Tr. of

Dowling Coll., 152 A.D.2d 534, 535-36 (2d Dep't 1989).  Opinion includes imaginative expression

and rhetorical hyperbole.  See Celle, 209 F.3d at 178; Steinhilber, 68 N.Y.2d at 292.  Whether the

challenged statements are fact or opinion is a question of law to be decided by the Court.  Id.

As is particularly pertinent to this matter, Courts have held that "the evaluation of an

employee's performance, even an unsatisfactory evaluation, is a matter of opinion that cannot be

objectively categorized as true or false and cannot be actionable."  Brattis v. Rainbow Adver.

Holdings, L.L.C., 2000 U.S. Dist. LEXIS 7345, *10-11 (S.D.N.Y. 2000); see also Wait v. Beck's N.

Am., Inc., 241 F. Supp. 2d 172, 183 (N.D.N.Y. 2003) ("an evaluation of an employee's performance

. . . constitutes a statement of non-actionable opinion.").

Here, plaintiff attributes the following words to the University:  that he was "difficult,

ineffective, unsuited for the Chair Position, a trouble make [sic], incompetent, given to distorting

facts and events, and an instigator."  These words, even assuming they were stated, are absolutely

protected statements of opinion.  Indeed, courts routinely dismiss defamation claims premised on

statements like those challenged here, which relate to an employee's work performance and attitude.

See e.g. Williams v. Varig Brazilian Airlines, 169 A.D.2d 434, 438 (1st Dep't 1991)(finding that

statements "concerning plaintiff's work and attitude are expressions of opinion which, as a matter of

law, do not constitute defamatory statements").

For instance, in Wait, 241 F. Supp. 2d at 183, the Court dismissed the plaintiff's

employment-related defamation claims by holding that "[s]tatements that someone has acted

unprofessionally or unethically generally are constitutionally protected statements of opinion." The Court went on to state that "[t]hese types of statements or evaluations often have no precise meaning, are not capable of being objectively characterized as true or false, and are merely a general reflection of the speaker's viewpoint." Id. at 184.

Similarly, in Tasso v. Platinum Guild Int'l, 1998 U.S. Dist. LEXIS 18908, *17 (S.D.N.Y. Dec. 3, 1998), the Court dismissed a defamation claim premised on comments that the plaintiff-employee was "unethical, untrustworthy and unprofessional" and "incompetent", holding that those comments were "non-actionable statements of opinion." See also Gavenda v. Orleans County, 1997 U.S. Dist. LEXIS 1527, *25 (W.D.N.Y. Feb. 11, 1997)(holding that comments that the plaintiff was "incompetent", not "doing her job right" and "no good" are "merely expressions of opinion"); Steele v. Polymer Research Corp. 1987 U.S. Dist. LEXIS 5270, **15-16 (S.D.N.Y.  June 18, 1987)(dismissing comments that the plaintiff was "professionally incompetent and ignorant" and a "trouble maker" as "protected opinion");  Leone v. Rosenwach, 245 A.D.2d 343, 343 (2d Dep't 1997)(holding that comments that the plaintiff was an "incompetent worker" and was "unfit for his job" constituted non-actionable opinion); Falk v. Anesthesia Assoc. of Jamaica, 228 A.D.2d 326, 328 (1st Dep't 1996)(upholding dismissal of defamation claim based on comments that the plaintiff was a "troublemaker" and was "not a team player").

The purported comments alleged by plaintiff in support of his defamation claim, even if made, are constitutionally protected statements of opinion.

### H.    Plaintiff's *Prima Facie* Tort Claim Fails to State a Claim

Plaintiff's eleventh cause of action is for prima facie tort.  Under New York Law, the elements necessary to establish a claim of prima facie tort are: (1) intentional infliction of harm; (2) which results in special damages; (3) without any excuse or justification; (4) by an act or

series of acts which would otherwise be lawful.  See Carter v. Cornell Univ., 976 F. Supp. 224,

233 (S.D.N.Y. 1997), aff'd, 1998 U.S. App. LEXIS 18807 (2d Cir. July 9, 1998).  Moreover,  the

complaint must (1) state the material facts, not merely conclusions, in concise form, (2)

separately state the allegations referable to this cause, and (3) allege special damages.

Winderbaum v. Winderbaum, 39 Misc. 2d 478, 479 (Sup. Ct. Bronx Cty.), aff'd, 20 A.D.2d 626

(1st Dep't 1963).

Courts have observed that a claim for prima facie tort "should not become a 'catch-all'

alternative for all recovery for every cause of action which cannot stand on its own legs." Belsky

v. Lowenthal, 62 A.D.2d 319, 323 (1st Dep't 1978), aff'd, 47 N.Y.2d 802 (1979).  If there is

recovery available under a traditional tort theory, the courts will not allow a cause of action

founded in prima facie tort to go forward. See Curiano v. Suozzi, 63 N.Y.2d 113, 117 (1984)

(stating that while prima facie tort may be pleaded in the alternative, "once a traditional tort is

established the cause of action for prima facie tort disappears").

In order to state a claim for prima facie tort, the plaintiff must allege that the defendant's

"sole motivation for the damaging acts has been a malicious intent to injure the plaintiff." Twin

Labs, Inc. v. Weider Health & Fitness, 900 F.2d 566, 570 (2d Cir. 1990).  Indeed, the Second

Circuit has noted that "motive other than disinterested malevolence, 'such as profit, self-interest,

or business advantage' will defeat a prima facie tort claim." Id.  "When a plaintiff sets forth

allegations that indicate that other motives were involved in the complained of conduct besides

disinterested malevolence, the cause of action must be dismissed." G-I Holdings, Inc. v. Baron

& Budd, 179 F. Supp. 2d 233, 251 (S.D.N.Y. 2001).

Here, plaintiff does not allege that the University took action against him solely to cause

him harm.  Indeed, in his Complaint, plaintiff alleges that the University took action against him

because of its interest in defeating a union organizing campaign and because of his testimony in support of that campaign. (Complaint at ¶¶ 21, 23-32). Plaintiff alleges that the University engaged in a "vitriolic and aggressive campaign to defeat the unionizing efforts" and that because of plaintiff's testimony before the NLRB, certain administrators at the University "refused to work with plaintiff." (Id. at ¶¶ 29, 32). Given these allegations, there is no question that plaintiff's Complaint does not support a prima facie tort claim because he has alleged reasons apart from "disinterested malevolence" for the University's actions. See id. at 252 (dismissing prima facie tort claim where plaintiff's complaint alleged that the defendant's conduct was, in part, motivated by its economic self-interest); see also Treppel v. Biovail Corp., 2004 U.S. Dist. LEXIS 20714, ** 60-61 (S.D.N.Y. Oct. 15, 2004)(dismissing prima facie tort claim where complaint indicated that defendants' actions were motivated "at least in part, by a self-serving desire to protect their business"); Daniels v. St. Luke's-Roosevelt Hosp. Center, 2003 U.S. Dist. LEXIS 18772, *19 (S.D.N.Y. Oct. 21, 2003) (prima facie tort claim dismissed where plaintiff alleged no facts establishing that defendants acted with the "sole intent to harm").

Plaintiff also must specifically allege that he suffered measurable damage, which "requires an allegation of special damages." Curiano, 63 N.Y.2d at 117. "Special damages must be alleged with sufficient particularity to identify actual losses. They must be fully and accurately stated." Groat v. Town Bd. of Glenville, 100 Misc.2d 326, 329 (Sup. Ct. Schenectady Cty. 1979). The failure to allege special damages is crucial, as such inadequate pleading will support dismissal for failure to state a valid cause of action. Curiano, 63 N.Y.2d at 117.

Here, plaintiff has failed, other than in the most conclusory form, to allege that he suffered special damages. As the aforementioned cases indicate, general allegations of harm and "broad, conclusory allegations such as "irreparable injury . . .[to] reputation and great mental

pain and anguish . . . are clearly insufficient." Patane v. Griffin, 164 A.D.2d 192, 196 (3d Dep't 1990), appeal denied, 77 N.Y.2d 810 (1991).   In the Complaint allegations relating to his prima facie tort claim, plaintiff alleges only that he has been caused "harm and injury" and that he was "deprived of property and employment benefits and opportunities and has suffered other compensatory and special damages." (Complaint at ¶¶ 85, 87).  These statements are clearly boilerplate allegations that fail to adequately state or describe the special damages allegedly incurred by the plaintiffs.  See Daniels v. Provident Life & Cas. Ins., 2001 U.S. Dist. LEXIS 11388, *21 (W.D.N.Y. July 25, 2001)("A general description of damages such as 'lost employment, wages and benefits' does not satisfy the requirement of pleading special damages.")

## CONCLUSION

For all these reasons, defendants respectfully submit that the Court should dismiss the Complaint in its entirety for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1) or, alternatively, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: Garden City, New York
September 7, 2005

NIXON PEABODY LLP

/S/

By:_____
James P. O'Brien, Jr. (JO 9373)
Joseph J. Ortego (JO 3839)

990 Stewart Avenue
Garden City, New York 11530
(516) 832-7500

Attorneys for defendants